| | |
|---|---|
| CLARISSA NEWBY,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT ABREUCERDA, et al.,<br><br>Defendants. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br>**NEWARK VICINAGE**<br><br>Hon. Jamel K. Semper, U.S.D.J.<br>Hon. Michael A. Hammer, U.S.M.J.<br><br>Civil Action No. 25-15433 (JKS/MAH)<br><br>Motion Date: April 20, 2026<br><br>**(Electronically Filed)** |

# REPLY BRIEF IN SUPPORT OF LYFT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**
50 Tice Boulevard, Suite 250
Woodcliff Lake, New Jersey 07677
(201) 474-7100
dsanchez@cmlawfirm.com
mmoran@cmlawfirm.com
Attorneys for Defendant,
Lyft, Inc.

Douglas V. Sanchez, Esq.
Of Counsel

Michael T. Moran, Esq.
On the Brief

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

POINT I

PLAINTIFF'S OPPOSITION CONFIRMS THAT THE COMPLAINT CONTAINS ONLY CONCLUSORY ASSERTIONS UNSUPPORTED BY FACTUAL ALLEGATIONS .......... 2

A. The Operative Pleading Is the Complanit, and the Complaint Alone Governs Lyft's Motion. .......... 2

B. The Complaint's Allegations Are Conclusory Legal Conclusions, Not Well-Pleaded Facts .......... 4

C. Plaintiff's Opposition Confirms the Deficiency Rather than Curing it .......... 7

POINT II

EVEN ASSUMING THAT PLAINTIFF'S COMPLAINT CONTAINED THE UN-PLEADED FACTS THAT SHE NOW RELIES UPON, HER NEGLIGENT HIRING, RETENTION, TRAINING, SUPERVISION, AND ENTRUSTMENT CLAIMS NEVERTHELESS FAIL UNDER THE NEW JERSEY TNC STATUTE .......... 11

A. The TNC Statute Exclusively Governs Lyft's Obligations .......... 11

B. New Jersey Courts Have Dismissed Direct Negligence Claims Against Lyft Where the TNC Statute Was Satisfied .......... 12

C. Plaintiff Does Not Allege—and Cannot Allege—that Lyft Violated the TNC Statute .......... 12

D. Plaintiff's Suspended-License Argument Does Not Salvage her Claims Under the TNC Statute .......... 13

POINT III

PLAINTIFF'S ALTERNATIVE REQUEST FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED BECAUSE SUCH AN ENDEAVOR WOULD BE FUTILE AS A MATTER OF LAW ........................................................ 14

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases** **Page**

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................... 1, 5

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................... 1

Bonanni v. Thompson,
No. 14-4745, 2014 U.S. Dist. LEXIS 196070 (D.N.J. Dec. 22, 2014) ........................ 14

Brearey v. Ramsahai,
No. 24-1693, 2024 U.S. Dist. LEXIS 99655 (E.D. Pa. June 5, 2024) ........................... 5

Brown v. United States Steel Corp.,
462 F. App'x 152 (3d Cir. 2011) ................................................................ 3

Carlett v. N.J. State Police,
No. 12-153, 2013 U.S. Dist. LEXIS 107820 (D.N.J. July 31, 2013) .......................... 15

Connelly v. Lane Constr. Corp.,
809 F.3d 780 (3d Cir. 2016) ..................................................................... 13

Di Cosala v. Kay,
450 A.2d 508 (N.J. 1982) ......................................................................... 8

Fallon v. Mercy Catholic Med. Ctr.,
877 F.3d 487 (3d Cir. 2017) ....................................................................... 8

G.A.-H. v. K.G.G.,
210 A.3d 907 (N.J. 2019) ....................................................................... 8, 9

Henry v. Marcelin,
No. 24-1891, 2024 U.S. Dist. LEXIS 173705 (E.D. Pa. Sept. 25, 2024) ........................ 5

Hoag v. Brown,
935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007)....................10

Islam v. Harris,
No. SOM-L-1161-19 (N.J. Super. Ct. Law Div. Feb. 17, 2022)....................12

Janowski v. City of N. Wildwood,
259 F. Supp. 3d 113 (D.N.J. 2017)....................3

Langley v. United Airlines,
No. 23-20602, 2024 U.S. Dist. LEXIS 114250 (D.N.J. June 28, 2024)....................10

Mayer v. Belichick,
605 F.3d 223 (3d Cir. 2010)....................3, 4

Mazzacano v. Est. of Kinnerman,
962 A.2d 1103 (N.J. 2009)....................11

Moretz v. Trs. of Princeton,
No. 21-19822, 2023 U.S. Dist. LEXIS 230763 (D.N.J. Dec. 29, 2023)....................9

Pa. ex rel. Zimmerman v. Pepsico, Inc.,
836 F.2d 173 (3d Cir. 1988).................... 3

State v. Moran,
997 A.2d 210 (N.J. 2010).................... 13

Uslu v. Evans,
No. 24-5482, 2025 U.S. Dist. LEXIS 18350 (E.D. Pa. Jan. 31, 2025).................... 5, 6, 7

Westberry v. State Operated Sch. Dist. of Newark,
No. 15-7998, 2017 U.S. Dist. LEXIS 76432 (D.N.J. May 19, 2017)....................10, 11

**Statutes** **Page**

N.J. Stat. Ann. § 39:3-40.................... 1, 2

N.J. Stat. Ann. § 39:5H-1.................... 2

N.J. Stat. Ann. § 39:5H-16.................... 11

N.J. Stat. Ann. § 39:5H-16a.................... 12

N.J. Stat. Ann. § 39:5H-17.................... 11, 12

N.J. Stat. Ann. § 39:5H-18....................11

N.J. Stat. Ann. § 39:5H-18a ........ 12, 13

N.J. Stat. Ann. § 39:5H-19 ........ 11

N.J. Stat. Ann. § 39:5H-20 ........ 11, 13, 14

N.J. Stat. Ann. § 39:5H-20a ........ 13

N.J. Stat. Ann. § 39:5H-20b ........ 13

N.J. Stat. Ann. § 39:5H-20b(4) ........ 13

N.J. Stat. Ann. § 39:5H-26 ........ 11

**Rules** **Page**

Fed. R. Civ. P. 10(c) ........ 2

Fed. R. Civ. P. 12(c) ........ 2, 4

Fed. R. Civ. P. 12(d) ........ 3

## PRELIMINARY STATEMENT

Plaintiff, Clarissa Newby's Opposition confirms the fundamental deficiency that Defendant, Lyft, Inc.'s Motion for Judgment on the Pleadings (the "Motion") identified: Plaintiff cannot point to a single well-pleaded factual allegation in the Complaint that supports a plausible claim for negligent hiring, retention, training, supervision, or entrustment. Indeed, Plaintiff concedes as much, acknowledging that she "admittedly did not plead that Defendant Abreucerda was operating a motor vehicle on a suspended license."[1] See ECF No. 17, p. 7. Instead of defending the operative pleading, Plaintiff attempts to salvage her claims by relying on facts that do not appear in the Complaint—namely, Defendant Robert Abreu Cerda's allegedly suspended driver's license, as reflected in a New Jersey Police Crash Investigation Report (the "Police Report")—while simultaneously arguing that her boilerplate allegations satisfy the federal pleading standard. The Court should reject both maneuvers. Plaintiff's Opposition does not alter the reality that Count II of the Complaint is legally deficient under the well-settled pleading regime set forth by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Setting aside Plaintiff's pleading deficiencies, her direct negligence claims against Lyft fail as a matter of law for an independent reason: Plaintiff has not alleged—and cannot allege—that

[1] N.J. Stat. Ann. § 39:3-40 states, in relevant part:

> No person to whom a driver's license has been refused or whose driver's license or reciprocity privilege has been suspended or revoked, or who has been prohibited from obtaining a driver's license, shall personally operate a motor vehicle during the period of refusal, suspension, revocation, or prohibition.
>
> No person whose motor vehicle registration has been revoked shall operate or permit the operation of such motor vehicle during the period of such revocation.

It is important to note that such a charge may be levied based on an alleged revocation of a motor vehicle registration, or a driver's license—not just a driver's license.

Lyft violated the New Jersey Transportation Network Company ("TNC") statute, N.J. Stat. Ann. § 39:5H-1, et seq., which exclusively governs rideshare companies like Lyft. Plaintiff has not pleaded or otherwise suggested facts demonstrating that Lyft failed to perform the background or driving checks required by New Jersey law. And because Plaintiff has not alleged that Lyft knew or should have known about any suspension through the statutory screening process, her suspended-license argument fails as a matter of law.

Finally, Plaintiff's request for leave to amend the Complaint should be denied. As argued above, Plaintiff has not presented facts establishing that Lyft violated the TNC statute, or that Lyft knew or should have known about Abreu's unfitness to operate a motor vehicle prior to the subject motor vehicle accident. Because Plaintiff's proposal to amend the Complaint would be a fruitless endeavor, this Court should decline such an invitation.

## ARGUMENT

## POINT I

## PLAINTIFF'S OPPOSITION CONFIRMS THAT THE COMPLAINT CONTAINS ONLY CONCLUSORY ASSERTIONS UNSUPPORTED BY FACTUAL ALLEGATIONS.

### A. The Operative Pleading Is the Complaint, and the Complaint Alone Governs Lyft's Motion.

On a Rule 12(c) motion for judgment on the pleadings, a district court examines only the pleadings, i.e., the Complaint, the Answer, and written instruments attached as exhibits to the pleadings. See Fed. R. Civ. P. 10(c); Fed. R. Civ. P. 12(c). Plaintiff's Opposition conspicuously shifts the focus away from the four corners of the Complaint and instead directs the Court to Exhibit A to her Opposition, namely the Police Report indicating that Abreu was cited under N.J. Stat. Ann. § 39:3-40. See ECF No. 17-3. Setting aside that such a citation can be based on a revoked motor vehicle registration, or a driver's license issue, the Police Report is not referenced in, part

of, or even inextricably intertwined with the Complaint. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Indeed, the allegation that Abreu was operating a motor vehicle on a suspended driver's license does not appear anywhere in Plaintiff's operative pleading, as Plaintiff herself acknowledges in her Opposition. See ECF No. 17, p. 7 ("Plaintiff admittedly did not plead that Defendant Abreucerda was operating a motor vehicle on a suspended license."). The Court cannot consider facts outside the pleadings on a motion for judgment on the pleadings without converting the motion to one for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); Brown v. United States Steel Corp., 462 F. App'x 152, 155 (3d Cir. 2011) ("[A] district court properly converts a motion to dismiss into a motion for summary judgment if (1) the materials submitted go outside of the pleadings and are not excluded by the court and (2) the parties had adequate notice of the district court's intention to convert."). Similarly, Plaintiff cannot amend her Complaint through a brief submitted in opposition to Lyft's Motion. See Pa. ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); Janowski v. City of N. Wildwood, 259 F. Supp. 3d 113, 120 (D.N.J. 2017) ("[T]he permissible role of a plaintiff's opposition brief is merely to explain the 'legal theories . . . that [ ] find support in the allegations set forth in the complaint.'") (quoting Zimmerman, 836 F.2d at 181).

Thus, when reviewing Lyft's Motion, the Court should limit its analysis to the pleadings, as required by Rule 12(c). To the extent Plaintiff might argue that the Police Report is a "matter of public record" that the Court may consider, that exception applies only where a plaintiff's claims are "based upon" such documents. See Mayer, 605 F.3d at 230. Here, the Complaint makes no reference to the Police Report, and Plaintiff's claims are not based upon it. The public records exception is therefore inapplicable.

**B. The Complaint's Allegations Are Conclusory Legal Conclusions, Not Well-Pleaded Facts.**

As Lyft demonstrated in its Motion, Count II of the Complaint consists entirely of generic, boilerplate allegations that could be lodged against ***any*** company regarding ***any*** employee. See ECF No. 15-1, pp. 9–14. Plaintiff alleges that Lyft (1) failed to "properly and adequately qualify[]" Abreu; (2) failed to "conduct a proper and adequate background check"; (3) failed to "provide proper, adequate, ongoing and/or remedial training"; (4) "retain[ed] and permitt[ed]" Abreu to drive "when Defendant Lyft knew or . . . should have known . . . that Defendant Robert Abreucerda aka Robert Abreu was incompetent and/or unfit to drive a subject rideshare vehicle"; (5) failed to "properly and adequately train, monitor and/or supervise" Abreu to ensure he "would adhere to proper safe and defensive driving practices custom to the industry and/or required by the New Jersey Motor Vehicle Code; (6) failed to "properly and adequately train, monitor, and/or supervise" Abreu to ensure he "could manage collision-free encounters with the motoring public"; and (7) failed to "warn the motoring public" that Plaintiff "would be exposed to" Abreu's "negligent, and/or careless operation of the subject rideshare vehicle." See ECF No. 1, pp. 6–9. These allegations do not identify any specific ***facts*** about Abreu's alleged unfitness to operate a motor vehicle, any particular prior bad acts, or any factual basis for inferring that Lyft had knowledge of

any dangerous attribute. These allegations are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." Iqbal, 556 U.S. at 678.

The insufficiency of Plaintiff's allegations is not an isolated determination. Three federal courts have dismissed materially identical negligent hiring, retention, supervision, training, and entrustment claims premised on the same boilerplate template used in this case, all brought by the same law firm: Simon & Simon, P.C. See Henry v. Marcelin, No. 24-1891, 2024 U.S. Dist. LEXIS 173705 (E.D. Pa. Sept. 25, 2024); Brearey v. Ramsahai, No. 24-1693, 2024 U.S. Dist. LEXIS 99655 (E.D. Pa. June 5, 2024); Uslu v. Evans, No. 24-5482, 2025 U.S. Dist. LEXIS 18350 (E.D. Pa. Jan. 31, 2025). This pattern of dismissal confirms that the pleading deficiencies at issue are systemic to the complaint template, not a product of case-specific factual shortcomings.

In Uslu v. Evans, United States Magistrate Judge Sitarski granted the defendant's motion to dismiss a negligent entrustment claim against Drivetime Car Sales Company, LLC—a vehicle owner whose employee allegedly cause a motor vehicle accident. 2025 U.S. Dist. LEXIS 18350, at *1-2. The court observed that the plaintiff's "proximate cause" allegations "appear to have been largely cut and pasted" from earlier cases brought by Simon & Simon, "with only minor adjustments made primarily concerning the name and gender of the vehicle operator and type of vehicle operated." Id. at *9. Critically, the Uslu court noted that "[t]wo judges within this district have already rejected as legally insufficient negligent entrustment claims based on substantially equivalent averments in cases brought by the same firm that represents Plaintiff in this matter, Simon & Simon, PC." Id. at *8-9 (citing Henry, 2024 U.S. Dist. LEXIS 173705; Brearey, 2024 U.S. Dist. LEXIS 99655).

The Uslu court's analysis is directly applicable here. Plaintiff's allegations in Count II of the Complaint—that Lyft failed to "properly and adequately qualify[]" Abreu, failed to conduct "a

proper and adequate background check," and failed to "take proper and adequate measures to prevent [Abreu] from endangering the motoring public," see ECF No. 1, pp. 6–9—mirror the identical boilerplate language that was found insufficient in Uslu, Henry, and Brearey. As the Uslu court explained, quoting Judge Kenney's decision in Brearey:

> This is a fact-intensive case in which the Plaintiff has not put forward any facts at all to support a plausible claim of negligent . . . entrustment by [the defendant vehicle owner]. Plaintiff makes a naked legal assertion that [the defendant] was negligent without cloaking that assertion in any facts, which is exactly the kind of "legal conclusion couched as a factual allegation" that the Supreme Court warned against in Iqbal.

Id. at *10 (quoting Brearey, 2024 U.S. Dist. LEXIS 99655, at *4–5). The Uslu court further observed that the allegations in Henry were "arguably stronger than in this case because Henry at least averred that the co-defendant vehicle operator had 'numerous traffic violations' and had made public TikTok videos showing himself driving with no hands and while looking at the camera rather than the road." Id. at *9. Even those additional allegations were found insufficient. A fortiori, Plaintiff's Complaint here—which contains no allegations of prior misconduct whatsoever—cannot satisfy the pleading standard.

The significance of this pattern cannot be overstated. When multiple federal judges, applying the same pleading standard, independently reach the same conclusion—that these template allegations fail to state a plausible claim—this Court should be persuaded that the deficiencies are fundamental, not mere drafting oversights curable by amendment. As the Uslu court explained, additional unsupported allegations "are simply additional unsupported and speculative boilerplate that fails to advance the negligent entrustment claim." Id. The same is true here. Plaintiff's enumeration of sub-allegations (a) through (h) does not transform conclusions of law into well-pleaded facts.

Plaintiff may attempt to distinguish Uslu, Henry, and Brearey by arguing that those cases involved different defendants or different factual circumstances. However, the Uslu court expressly rejected such arguments. In Uslu, the plaintiff argued that "the recent cases dismissing Negligent Entrustment counts by this Court are vastly different factually than the case at bar, especially in cases where the Defendant is a rideshare party." Id. at *11. The court found this contention "meritless," explaining: "First, far from being 'vastly different factually,' the negligent entrustment claim in this case largely mirrors the equivalent claims pled by the same counsel in those cases. . . . Second, Plaintiff makes no attempt to explain why a claimant purportedly must only plead a factual basis for his or her negligent entrustment claim where the non-driver co-defendant is a rideshare company." Id. at *11-12. The same reasoning applies here. Plaintiff's attempt to distinguish the governing authority would fail for the same reasons.

In light of the consistent rulings in Henry, Brearey, and Uslu, this Court should join its sister courts in holding that Simon & Simon's boilerplate pleading strategy does not satisfy the requirements of Twombly and Iqbal. Count II of Plaintiff's Complaint should be dismissed with prejudice.

**C. Plaintiff's Opposition Confirms the Deficiency Rather than Curing it.**

Plaintiff's Opposition unwittingly confirms the fatal deficiency in the Complaint. Rather than directing the Court to well-pleaded facts showing ***specific instances*** of Abreu's prior wrongdoing, Plaintiff repeatedly invokes the Police Report and Abreu's alleged motor vehicle summons for having a suspended driver's license, neither of which appears in the operative pleading. Plaintiff states, for example, that "had [Lyft] acted diligently, [it] would not have allowed Defendant Abreucerda to operate a vehicle illegally while using [the] Lyft application." See ECF No. 17, p. 2. This assertion is missing from the Complaint. Plaintiff even "admittedly did not plead that Defendant Abreucerda was operating a motor vehicle on a suspended license." See ECF No.

17, p. 7. This concession is dispositive. See Fallon v. Mercy Catholic Med. Ctr., 877 F.3d 487, 493 (3d Cir. 2017) ("Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss. If a court wishes to consider documents outside the pleadings, it must convert a motion to dismiss into a motion for summary judgment."). If the only fact that Plaintiff can point to in support of her direct negligence claims is not within the four corners of the Complaint, the Complaint itself fails to state a plausible claim for relief.

Furthermore, the case law cited and relied upon by Plaintiff does not move the needle. For example, Di Cosala v. Kay does not help Plaintiff—it hurts her. There, the New Jersey Supreme Court reversed summary judgment only because the record contained specific, concrete facts: the employer knew that an employee possessed loaded firearms in his living quarters where he received social guests, including children, and the employer's own regulations prohibited firearms on the premises. 450 A.2d 508, 511–12, 518–19 (N.J. 1982). The employer's actual knowledge of the dangerous instrumentality created a factual question regarding foreseeability. Id. at 518. Here, by contrast, Plaintiff's Complaint contains no analogous factual allegations—no specific unfitness to operate a motor vehicle, no prior bad acts, and no knowledge by Lyft. Instead, the Complaint chronicles only a ***singular*** motor vehicle accident. Di Cosala thus supports Lyft's position insofar as the elements that Di Cosala announced are precisely the elements that Plaintiff failed to plead in the Complaint.

In addition, Plaintiff cites the New Jersey Supreme Court's decision in G.A.-H. v. K.G.G., 210 A.3d 907 (N.J. 2019), which affirms the standard governing negligent hiring, retention, and supervision claims. Lyft does not dispute the standard. However, G.A.-H. underscores the ***knowledge*** requirement. See id. at 916 ("To be found liable for negligent hiring, the plaintiff must show: (1) that the employer 'knew or had reason to know of the particular unfitness, incompetence

or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons' and (2) 'that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury.'") (quoting Di Cosala, 450 A.2d at 516). There, the Court determined that, even where an employee "bragged about having a younger 'girlfriend' at work," showed a co-worker images and videos of the plaintiff (including "[a] small cellphone image of a naked female"), and drove the employer's ambulance to the victim's bus stop, those facts did not establish that the employer knew or should have known of the employee's sexual relationship with a minor victim. Id. at 917. If those facts were insufficient to impute an employer's knowledge of an employee's particular unfitness or dangerous attributes, then a fortiori Plaintiff's total absence of factual allegations regarding Abreu's unfitness or Lyft's knowledge cannot satisfy this element.

Next, Moretz v. Trustees of Princeton, No. 21-19822, 2023 U.S. Dist. LEXIS 230763 (D.N.J. Dec. 29, 2023), is factually and legally distinguishable. There, the court denied a motion to dismiss the plaintiff's negligent hiring and supervision claim because she pleaded ***specific*** factual content: (1) Princeton University had received prior reports from at least two other students that a professor had engaged in "sexual misconduct"; and (2) Princeton University failed to warn other known female students in the professor's classes, despite this actual knowledge. Id. at *15–16. In turn, the court concluded that those allegations were sufficient to "raise[] the gross negligence claim above a speculative level." Id. at *16. Here, there are no comparable allegations. Plaintiff does not allege that Lyft received any prior reports about Abreu, that Abreu had any prior incidents on the Lyft ridesharing platform, or that Lyft had any knowledge whatsoever of any unfitness or dangerous attributes. Moretz thus reinforces the governing principle that ***specific*** factual allegations of prior notice are required to pass procedural muster.

Remarkably, Plaintiff cites Langley v. United Airlines, Inc., even though Langley squarely supports Lyft's position. In Langley, this District granted a motion to dismiss where the plaintiff "merely parrot[ed] the elements for claims of negligent retention, supervision, and training" and did "not allege any facts to support an inference that Rivera, or any other employee of Defendants, was particularly unfit, incompetent, or dangerous before the altercation." No. 23-20602, 2024 U.S. Dist. LEXIS 114250, at *29–30 (D.N.J. June 28, 2024). Judge Salas emphasized that the plaintiff failed to allege "what conduct Rivera had engaged in with respect to United's business invitees before the altercation with Plaintiff took place." Id. at *29 n.5. The same is true here. Plaintiff's Complaint "merely parrots" the elements of her direct negligence claims against Lyft without alleging any specific prior conduct by Abreu or any factual basis for Lyft's knowledge or unfitness. Plaintiff's attempt to distinguish Langley by asserting that her Complaint "does not merely parrot the claims," see ECF No. 17, p. 6, is unavailing, as the allegations in her Complaint track the same generic, conclusory pattern the Langley Court found insufficient.

Finally, Westberry v. State Operated School District of Newark, No. 15-7998, 2017 U.S. Dist. LEXIS 76432 (D.N.J. May 19, 2017), supports Lyft's position. In Westberry, the court dismissed a negligent retention claim because the plaintiffs "fail[ed] to plausibly plead facts that support his negligent [retention] claim," and his "allegations fall far short of the necessary conduct or history that would put the [employer] on notice" of the employee's unfitness. Id. at *30–31. The court specifically noted that, to support a negligent retention claim, New Jersey courts have "required the following types of factual allegations to support such a claim": (1) an employee's possession of loaded firearms in a children's camp area (Di Cosala); (2) and retention of a corrections officer "who had an extensive disciplinary record" (Hoag v. Brown, 935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007). Id. at *30–31. Here, Plaintiff's Complaint is devoid of any

comparable factual content. Akin to the Westberry plaintiff, Plaintiff has not "sufficiently pled that [Abreu] had a particular incompetence, unfitness, or dangerous attribute much less that it was known (or should have been known) to [Lyft]." Id. at *31.

## POINT II

## EVEN ASSUMING THAT PLAINTIFF'S COMPLAINT CONTAINED THE UN-PLEADED FACTS THAT SHE NOW RELIES UPON, HER NEGLIGENT HIRING, RETENTION, TRAINING, SUPERVISION, AND ENTRUSTMENT CLAIMS NEVERTHELESS FAIL UNDER THE NEW JERSEY TNC STATUTE.

### A. The TNC Statute Exclusively Governs Lyft's Obligations.

Even assuming arguendo that the Complaint contained the facts Plaintiff now attempts to introduce through her Opposition—chiefly, Abreu's alleged citation for operating a motor vehicle on a suspended driver's license (or with a revoked motor vehicle registration)—Plaintiff's direct negligence claims would still fail as a matter of law. Under New Jersey law, TNCs like Lyft "shall be governed exclusively" by the TNC statute. N.J. Stat. Ann. § 39:5H-26 (emphasis added). The TNC statute sets forth detailed, specific requirements for TNCs regarding driver approval, including criminal background checks and driving record checks. See N.J. Stat. Ann. §§ 39:5H-16 through -20. The direct negligence claims that Plaintiff seeks to impose on Lyft are inconsistent with this statutory framework and legally improper. As the New Jersey Supreme Court has articulated, courts "cannot, and should not, 'rewrite a plainly-written enactment of the Legislature' or 'write in an additional qualification which the Legislature pointedly omitted.'" Mazzacano v. Est. of Kinnerman, 962 A.2d 1103, 1113 (N.J. 2009) (quoting DiProspero v. Penn, 874 A.2d 1039, 1048 (N.J. 2005)). Thus, Lyft cannot be directly liable for Plaintiff's direct negligence theories under New Jersey law, and Plaintiff cannot plead facts to the contrary. See, e.g., id. at 1110 (holding that a social club could not be negligent under the New Jersey Dram Shop Act because it was "the

exclusive civil remedy . . . [for] the negligent service of alcoholic beverages by a licensed alcoholic beverage server") (quoting N.J. Stat. Ann. § 2A:22A-4).

**B. New Jersey Courts Have Dismissed Direct Negligence Claims Against Lyft Where the TNC Statute Was Satisfied.**

In 2022, the New Jersey Superior Court held that Lyft's compliance with the TNC statute precluded a direct negligence finding against Lyft. See February 17, 2022 Motion Hearing Transcript in Islam v. Harris, No. SOM-L-1161-19 (N.J. Super. Ct. Law Div. Feb. 17, 2022), attached as **Exhibit B** to the Supplemental Declaration of Michael T. Moran, Esq. In Islam, the plaintiff was injured in a motor vehicle accident when the vehicle he operated was struck by a vehicle operated by Shaquanna Harris while she was logged into the Lyft platform. See id. at 6:2-23. The plaintiff argued that Harris should not have been permitted to use the Lyft platform because Harris had a series of prior motor vehicle violations that including moving and non-moving violations. See id. at 7:5-8:20. The court rejected the argument, concluding that Lyft complied with the TNC statute's requirements for driver eligibility, stating, "the Legislature decided with respect to viability -- eligibility -- of drivers having eligibility to drive for Lyft." See id. at 9:5-8. The court, confirming the exclusivity of the TNC statute as applied to Lyft, ruled that "the TNC statute explicitly defines driver eligibility," "the duties of a transportation network company driver are beyond the ken of an average juror," and "whether there is a viable claim of negligence against Lyft . . . requires expert opinion." See id. at 9:14-19; 11:18-19.

**C. Plaintiff Does Not Allege—and Cannot Allege—that Lyft Violated the TNC Statute.**

Plaintiff's Complaint does not allege that ***Lyft*** failed to perform the background and driving record checks required by the TNC statute, or that it failed to require Abreu to submit a copy of his driver's license. See N.J. Stat. Ann. § 39:5H-16a (requiring presentment of a driver's license); N.J. Stat. Ann. § 39:5H-17 (outlining the process for criminal background checks for drivers); N.J.

Stat. Ann. § 39:5H-18a (necessitating a driving record check prior to logging on to a TNC's digital network to provide a prearranged ride). Plaintiff does not allege that Abreu had any disqualifying criminal convictions or violations[2] under the TNC statute. See N.J. Stat. Ann. § 39:5H-20 (setting forth the bases for driver disqualification). Rather, Plaintiff alleges generically that Lyft failed to "properly and adequately" qualify Abreu and failed to "conduct a proper and adequate background check," see ECF No. 1, pp. 6–9, which are conclusory allegations that do not engage with the specific statutory framework at all. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016) ("Twombly and Iqbal distinguish between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true. . . ."). Because the TNC statute explicitly defines Lyft's obligations with respect to driver approval and monitoring, and since Plaintiff does not allege a violation of that statute, her direct negligence claims fail as a matter of law.

### D. Plaintiff's Suspended-License Argument Does Not Salvage her Claims Under the TNC Statute.

Even if the Court were to consider Abreu's alleged suspended driver's license (or revoked motor vehicle registration)—which is outside the Complaint—this fact does not alter the calculus. Under the TNC statute, a driver is disqualified ***if his driving record includes*** "driving with a suspended or revoked license" in the prior three-year period. N.J. Stat. Ann. § 39:5H-20b(4). But Plaintiff does not allege—and cannot allege—that Abreu's driver's license was suspended at the time he was approved to drive on the Lyft platform, that a "violation" for driving with a suspended

[2] A driver is disqualified from using a TNC's digital network when convicted of one or more of the following crimes: aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, endangering the welfare of a child, or human trafficking. N.J. Stat. Ann. § 39:5H-20a. Moreover, a driver cannot drive on a TNC's digital platform if a driving record check reveals more than three moving violations in the prior three-year period, or the driver is ***convicted*** of the following in the prior three-year period: driving under the influence, resisting arrest or eluding an officer, reckless driving, or driving with a suspended or revoked license. N.J. Stat. Ann. § 39:5H-20b; see also State v. Moran, 997 A.2d 210, 214 n.3 (N.J. 2010) (providing examples of moving violations under New Jersey law).

driver's license appeared on any driving record check for Abreu, or that Lyft failed to perform the required statutory checks. The Police Report indicates that a motor vehicle summons was issued at the scene of the subject January 11, 2024, motor vehicle accident.[3] See ECF No. 17-3, p. 2. However, without any factual allegation that the suspension predated Abreu's approval or that Lyft knew or should have known of it through the statutory screening process, the suspended driver's license is irrelevant to whether Lyft complied with its statutory obligations.

**POINT III**

**PLAINTIFF'S ALTERNATIVE REQUEST FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED BECAUSE SUCH AN ENDEAVOR WOULD BE FUTILE AS A MATTER OF LAW.**

In the final paragraph of her Opposition, Plaintiff requests leave to amend "to include these details," presumably the allegation that Abreu was driving on a suspended driver's license. See ECF No. 17, p. 7. This request should be denied as futile. See Bonanni v. Thompson, No. 14-4745, 2014 U.S. Dist. LEXIS 196070, at *3–4 (D.N.J. Dec. 22, 2014) ("Morey's argues that the proposed second amended complaint [to include a negligent hiring claim] provides 'no factual details to support the proposed claim.' . . . The Court agrees. . . . Because plaintiff's proposed second amended complaint fails to plead any factual allegations that Morey's knew or had reason to know, at the time of hiring, that Thompson would be an unfit employee and that the alleged unfitness caused plaintiff's injury, plaintiff has failed to allege a plausible cause of action. . . . Thus, since the amendment would be futile, the Court will deny plaintiff's amendment without prejudice.").

Even if Plaintiff were permitted to amend the Complaint to add the suspended driver's license (or revoked motor vehicle registration) allegation, an amended complaint would still fail

[3] Even if Abreu was issued a motor vehicle summons at the scene of the accident, that summons, standing alone, does not constitute a violation of the TNC statute. See N.J. Stat. Ann. § 39:5H-20.

to state a claim. As set forth in Point II above, a suspended driver's license at the time of the subject motor vehicle accident does not establish that Lyft violated the TNC statute or that Lyft knew or should have known of any unfitness prior to the accident. See Carlett v. N.J. State Police, No. 12-153, 2013 U.S. Dist. LEXIS 107820, at *15–16 (D.N.J. July 31, 2013) (denying a motion to amend where "the [p]roposed [a]mended [c]omplaint does not contain factual allegations from which a reasonable inference can be drawn that either the VPD or VEMS knew or had reason to know, at the time of hiring, of the particular unfitness, incompetence or dangerous attributes of its employees, or that those characteristics caused Plaintiff's injuries"). Plaintiff would still need factual allegations that the suspension existed at the time Abreu was approved for the Lyft platform, that it appeared on a driving record check, or that Lyft otherwise had knowledge of it—none of which Plaintiff has alleged or suggested she can allege. Amendment would therefore be futile and should not be permitted.

## CONCLUSION

For the foregoing reasons, Count II of Plaintiff's Complaint should be dismissed with prejudice. Plaintiff has not identified a single well-pleaded factual allegation in her operative Complaint that supports a plausible claim for negligent hiring, retention, training, supervision, or entrustment. To the contrary, Plaintiff concedes that she did not plead the very fact she now relies upon—Abreu's suspended driver's license. Even if the Complaint contained that fact, Plaintiff cannot establish that Lyft violated the exclusive statutory framework governing TNCs in New Jersey. Three federal courts have already dismissed materially identical claims premised on the same boilerplate template. This Court should do the same. Lyft respectfully requests that the Court grant its Motion and dismiss Count II of Plaintiff's Complaint, with prejudice.

Respectfully submitted,

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

By: /s/ *Michael T. Moran*
Michael T. Moran, Esq.

Dated: April 13, 2026